UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GARY LYNN MORGAN,<br><br>                  Petitioner,<br><br>v.<br><br>JOHANNA SMITH, Warden of the Idaho State Correctional Institution,<br><br>                  Respondent. | Case No. 1:11-cv-00109-MHW<br><br>**MEMORANDUM DECISION AND ORDER** |

      Pending before the Court is Petitioner Gary Lynn Morgan's Petition for Writ of Habeas Corpus (Dkt. 1). Respondent has responded to the Petition by filing an Answer, Brief, and Motion to Dismiss (Dkt. 12). Petitioner has filed a Brief in Reply (Dkt. 15), which consists of his briefs on direct appeal and on appeal from the denial of his state postconviction petition. The Court takes judicial notice of the records from Petitioner's state court proceedings lodged by Respondent on October 3, 2011. (*See* Dkt. 13.) All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

      Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral

**MEMORANDUM DECISION AND ORDER - 1**

argument. Therefore, the Court shall decide this matter on the written briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order dismissing this case with prejudice.

## BACKGROUND

Petitioner Gary Lynn Morgan was charged in the District Court for the Third Judicial District of the State of Idaho, in Gem County, with two counts of lewd conduct with a minor under 16 years of age. (Pet., Dkt. 1, at 1.) The charges were "based on allegations that while living with his mother who operated a daycare center, Morgan sexually abused one of the boys in his mother's care on two occasions when Morgan forced the boy to perform oral sex on him. Morgan was thirty-eight years old and the boy was four years old at the time." (State's Lodging B-4 at 1-2.) Following a trial in which Petitioner testified in his own defense, a jury found Petitioner guilty on all charges, and he was sentenced to 10 years to life in prison on each count, the sentences to run concurrently. (State's Lodging A-1 at 145.)

Petitioner filed a direct appeal. He argued only that the trial court erred by failing to declare a mistrial or order a new trial after the prosecutor made two comments to the effect that Petitioner could or would testify in his own defense. (State's Lodging B-1 at 1, 4.)[1] The Idaho Court of Appeals affirmed Petitioner's convictions, holding that the prosecutor's comments constituted harmless error. (State's Lodging B-4 at 5.) Petitioner

---

[1] As will be discussed later in this opinion, the Petitioner ultimately did testify at the trial in his own defense.

**MEMORANDUM DECISION AND ORDER - 2**

filed a petition for review with the Idaho Supreme Court. (State's Lodging B-5.) The petition was denied, and the remittitur was issued a week later. (State's Lodging B-7 & B-8.)

Petitioner returned to the state trial court with a petition for postconviction review, arguing that his trial counsel was ineffective for: (1) failing to properly disclose to the prosecution and introduce into evidence certain records, and (2) failing to object to the trial judge's responses to two notes sent out by the jury asking what the jurors should do in the event they could not come to a unanimous decision. (State's Lodging C-1 at 10.) Petitioner was appointed post-conviction counsel. (*Id*. at 50.) The court dismissed Petitioner's claim regarding trial counsel's failure to object to the judge's responses to the jury's questions. (State's Lodging C-1 at 71-72; C-2 at 21-22.) The court denied Petitioner's other ineffectiveness claim after an evidentiary hearing.

Plaintiff appealed the denial of his postconviction petition, arguing that the trial court's responses to the jury constituted an unconstitutional "dynamite instruction" and that the court should have informed the jury that if they did not come to a unanimous decision, the case could be retried. (State's Lodging D-6 at 3-4.) The Idaho Court of Appeals held first that Petitioner had failed to raise this claim on direct appeal or before the trial court in his postconviction. (State's Lodging D-8 at 2-3.) Rather, the postconviction petition complained of the judge's responses to the jury notes only with respect to his attorney's *failure to object* to those responses—a related but separate claim.

**MEMORANDUM DECISION AND ORDER - 3**

Thus, Petitioner failed to preserve the issue for appeal. (*Id*. at 3.) Then, the Court of Appeals addressed Petitioner's ineffective assistance claim with respect to the jury notes even though Petitioner appeared to have abandoned that issue. (*Id*. at 2.) The court affirmed the trial court's dismissal of that claim. Petitioner did not file a petition for review with the Idaho Supreme Court.

Petitioner filed his federal Petition for Writ of Habeas Corpus in March 2011. He raises two claims. Claim 1 asserts that the prosecutor violated Petitioner's Fifth Amendment right not to testify when the prosecutor stated in his opening statement, and also during a detective's testimony, that Petitioner could or would testify. (Pet. at 3.) Claim 2 asserts that the district court denied him due process "by failing to answer the Jury's question's [sic] on what they needed to do if they [were] unable to come to a unanimous decision" and by failing to inform the jury that it was possible to have a hung jury. (*Id*.)

Respondent argues that Claim 2 is procedurally defaulted, and thus cannot be heard in federal court, and that Claim 1 must be denied on the merits.

## DISCUSSION

1.  **Claim 2: Judge's Responses to Jury's Questions**

During deliberations, the jury sent a note to the trial judge asking what to do if the jurors could not come up with a unanimous verdict. After discussing the matter with counsel, the judge responded, "As you have been previously instructed, your verdict with

**MEMORANDUM DECISION AND ORDER - 4**

regard to each count must be unanimous. It is up to you, the jury, to determine whether or not deliberations should continue, with regard to either or both charges. The court and counsel leave that decision up to you, in the exercise of your consciences." (State's Lodging C-1 at 42.) The jury later sent another note, asking, "What happens if all but one of us can't come up with a verdict?" (*Id*. at 44.) After conferring with counsel again, the judge responded, "As you have been instructed previously, with regard to each offense/count charged, any verdict you reach must be unanimous. It is for the jury to decide whether or not a unanimous verdict can be reached with regard to each count/offense charged." (*Id*. at 45.) Petitioner claims that the judge's statements to the jury violated his right to due process. (Pet. at 3.)

    A.    ***Procedural Default***

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This means that the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847. When a habeas petitioner has not fairly presented a constitutional claim to the highest state

**MEMORANDUM DECISION AND ORDER - 5**

court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

As noted above, after the Idaho Court of Appeals affirmed the state district court's denial of his postconviction petition, Petitioner did not petition the Idaho Supreme Court for review of that decision. Therefore, Claim 2 was not properly exhausted. *See O'Sullivan*, 526 U.S. at 842, 847. Further, because it is now too late to raise the claim in state court, *see* Idaho Code § 19-4902, Claim 2 is procedurally defaulted.[2] *See Gray*, 518 U.S. at 161-62.

### B.     *Cause and Prejudice*

Even if a petitioner's claim is procedurally defaulted, a federal district court could address the merits of the claim if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default; or (2) a showing that a miscarriage of justice will occur if the claim is not heard in federal court, which means that the alleged constitutional violation has probably resulted in the conviction of someone who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 329

---

[2] Claim 2 is also procedurally defaulted on the alternative basis that in declining to address the claim, the Idaho Court of Appeals applied an adequate and independent state procedural rule—that issues not raised in the trial court will not be addressed on appeal. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). In his postconviction petition, Petitioner did not raise a direct due process claim based on the trial courts statements to the jury, but instead raised only an ineffective assistance claim. He made his direct due process argument for the first time on appeal from the trial court's denial of his postconviction petition.

**MEMORANDUM DECISION AND ORDER - 6**

(1995); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488. To show "prejudice," a petitioner bears "the burden of showing, not merely that the errors [in his proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Petitioner has not provided any allegations or argument that would justify excusing the procedural default on the basis of cause and prejudice or actual innocence. His reply to Respondent's procedural default argument was to submit the briefs from his direct appeal and his appeal from the denial of state postconviction relief, neither of which addresses procedural default.

For the above reasons, Claim 2 of the Petition must be dismissed.

**2.    Claim 1: Fifth Amendment and Prosecutor's Comments**

   **A.    *Standard of Law for Merits Review***

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody

**MEMORANDUM DECISION AND ORDER - 7**

in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal habeas court reviews the state court's "last reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief is generally limited to instances where the state court's adjudication of the petitioner's claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. Section 2254(d)(1) has two clauses, each with independent meaning. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694

**MEMORANDUM DECISION AND ORDER - 8**

(2002).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. The standard of § 2254(d) is onerous and is satisfied only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

If a state court has found a constitutional violation but concluded it was harmless,

a federal habeas court does not simply consider whether the state court's harmlessness decision was unreasonable under § 2254(d)(1), but must apply an even "more forgiving" standard to determine whether the petitioner was prejudiced by the constitutional violation. *Fry v. Pliler*, 551 U.S. 112, 116 (2007). Habeas relief may not be granted unless the petitioner shows that "the error had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted); *see also Fry*, 551 U.S. at 121-22 (2007) (holding that the *Brecht* standard survived the passage of AEDPA). Because the *Brecht* standard "subsumes" the AEDPA reasonableness standard, federal courts "apply the *Brecht* test without regard for the state's harmlessness determination." *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010).

Petitioner challenges the Idaho Court of Appeals' legal conclusions in its decisions upholding his convictions. Petitioner does not identify any facts found by the state courts that he contends are unreasonable under § 2254(d)(2). (Pet. at 3.) Thus, the Court must determine whether the decision of the Idaho Court of Appeals "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C § 2254(d)(1).

### B. *Fifth Amendment Standard of Law*

The Fifth Amendment to the United States Constitution provides, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against

**MEMORANDUM DECISION AND ORDER - 10**

himself." Every criminal defendant has a right not to testify, and the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 616 (1965). Not every comment relating to the right not to testify violates the Fifth Amendment, however. The Fifth Amendment is "concerned only with *adverse* comment, whether by the prosecutor or the trial judge"; neutral comments, such as an instruction by the court that the jury may not infer guilt from a defendant's silence, do not offend the Constitution. *Lakeside v. Oregon*, 435 U.S. 333, 338 (1978).

Further, a prosecutor's comments on a defendant's choice not to testify will not violate the Fifth Amendment if those comments constitute fair argument offered in response to a defense claim that the defendant did not have a chance to tell his side of the story. *United States v. Robinson*, 485 U.S. 25, 31-32 (1988). In *Robinson*, the defendant did not testify at trial. During closing argument, defense counsel argued that the government had breached its "duty to be fair" and had not allowed the defendant to explain himself. *Id.* at 27 n.2. The prosecutor then told the jury, "[Defense counsel] has made comments to the extent the Government has not allowed the defendant[] an opportunity to explain. It is totally unacceptable. . . . He could have taken the stand and explained it to you, anything he wanted to. The United States of America has given him, throughout, the opportunity to explain." *Id.* at 28 The Supreme Court held that the prosecutor's statements, taken in the context in which they were made, did not violate the

**MEMORANDUM DECISION AND ORDER - 11**

defendant's Fifth Amendment right to be free from compelled self-incrimination. *Id.* at 31. The Court determined that the Fifth Amendment does not "prohibit [a] prosecutor from fairly responding to an argument of the defendant by adverting to [the accused's] silence." *Id.* at 34.

### C.  *Specific Factual Basis for Claim 1*

Petitioner's defense theory at trial was that he was out of the home working while the child was in the day care, so he could not have committed the crimes for which he was charged. Although put forth as an "alibi" defense, it was only a partial alibi. Petitioner did work outside the home, but not each and every day during the time period charged.

Before trial, defense counsel informed the judge and the prosecutor that his client would be testifying. The prosecutor, in his opening statement, explained to the jury that they were going to have to evaluate the credibility of witnesses and ask themselves whether those witnesses had a motive to lie. (State's Lodging A-3 at 8.) He then stated, "Mr. Charney [defense counsel] has indicated that [Petitioner] is going to testify too. And I want you to ask the same question of yourself when he testifies. What motive does he have to tell the truth or to lie?" (*Id.*) Defense counsel did not object to this comment.

After the state rested, defense counsel again informed the prosecutor that Petitioner was going to testify. When presenting the defense's case, counsel called Detective Dave Timony, who had interviewed Petitioner about the allegations against him. Timony's testimony established that he did not tape-record the interview. Counsel

**MEMORANDUM DECISION AND ORDER - 12**

asked whether Timony had told Petitioner the name of the victim; Timony answered that he had told Petitioner the first name of the child. The following exchange then took place:

| | |
|---|---|
| [Defense Counsel]: | Did [the Petitioner] express to you a concern that he didn't know who you were talking about? |
| [Prosecutor]: | Object, Your Honor. It's leading and it's hearsay. |
| [Defense counsel]: | In the absence of having [a] tape [recording], Your Honor, it's the only way I can ask these questions. |
| The Court: | All right. Yeah. |
| [Prosecutor]: | Mr. Morgan is here, and he can testify as to what he expressed. |
| The Court: | No. No. |
| [Defense counsel]: | If he keeps talking like that, we're going to have a mistrial. |
| The Court: | Yeah. Overrule the objection. |
| [Defense counsel]: | My question, then -- |
| The Court: | In fact, Counsel, approach the bench. |

(State's Lodging A-2 at 164-65.)

The content of the sidebar is not in the record. Defense counsel later moved for a mistrial on the grounds of the prosecutor's statement during the detective's testimony, as well as to the prosecutor's representation in his opening statement that Petitioner was going to testify. The judge declined to declare a mistrial, stating, "I'm just not at all persuaded that it would have that prejudicial an effect." (*Id*. at 230.)

The trial resumed. After Petitioner's mother testified, Petitioner took the stand and

**MEMORANDUM DECISION AND ORDER - 13**

testified in his own defense. The jury disbelieved Petitioner's testimony and found him guilty. The trial judge denied Petitioner's motion for a new trial, finding that the prosecutor's statements regarding Petitioner's anticipated testimony were harmless beyond a reasonable doubt. (State's Lodging A-1 at 129.)

**D.** *The Idaho Court of Appeals Reasonably Concluded that Petitioner Was Not Entitled to Relief on His Fifth Amendment Claim.*

In upholding the trial court's denial of Petitioner's motions for a mistrial and for a new trial, the Idaho Court of Appeals agreed with the district court that the prosecutor's comments constituted harmless error:

> The [trial] court determined that [Petitioner] was not unfairly prejudiced by the prosecutor's comments, which were made in reliance on defense counsel's repeated representations that [Petitioner] would, in fact, testify. In its written order denying [Petitioner's] request for a new trial, the district court reviewed the entire proceedings and held:
>
>> Consequently, this Court concludes that while the comments of the prosecutor were at least ill-advised, and arguably improper, the Court concludes that those comments did not prejudice [Petitioner's] right to a fair trial on these charges. In this case, [Petitioner] did not exercise his right to remain silent, in which event the prosecutor's comments may have been more problematic. Instead, he chose to testify, so the comments of the prosecuting attorney may fairly be characterized as harmless. Further, the Court cannot conclude that the prosecutor's comments forced [Petitioner] to forgo his right not to testify; the strategy of the defense, which he labeled an "alibi defense," placed him in a situation where his testimony was seemingly

**MEMORANDUM DECISION AND ORDER - 14**

>  necessary. By way of example, though his employment records ultimately did not become part of the record, it was through [Petitioner] that they were going to be introduced. Given the totality of the record in this trial, the Court can conclude, beyond a reasonable doubt, that there was no reasonable possibility that the comments complained of contributed to the jury's verdict.
>
>  We agree with the district court's analysis. This is not a case where the prosecutor attempted to create an inference of guilt by presenting evidence that the defendant exercised his right to remain silent during a police interrogation after having received *Miranda* warnings, or where the prosecutor in closing comments to the jury points to a defendant's failure to testify in the matter as an indication of guilt. Rather, [Petitioner] claims that he was denied a fair trial because the prosecutor's comments placed him in a posture that he was *required* to testify, thereby involuntarily giving up his right to remain silent.

(State's Lodging B-4 at 4-5) (internal quotations and footnote omitted).

The Idaho Court of Appeals noted, "The idea that [Petitioner] would be a witness in the case did not originate with the prosecution. Instead, the defense had led the prosecutor to believe on several occasions that [Petitioner] planned to testify on his own behalf, without any adverse comment first coming from the prosecution." (*Id*. at 5.) The appellate court concluded that "although the prosecutor's comments should not have been made in front of the jury, "once the defendant took the stand, the effect of the antecedent comments by the prosecutor could not have reasonably contributed to the verdict rendered by the jury." (*Id*.)

The state court's decision rejecting Petitioner's Fifth Amendment claim was

**MEMORANDUM DECISION AND ORDER - 15**

reasonable. Certainly, the prosecutor should have recognized that the wiser and more prudent practice would have been to refrain from making any comment even tangentially relating to Petitioner's constitutional right not to testify, and the Court agrees with the state court that the prosecutor should not have made the comments. However, the Court is not convinced that the prosecutor's comments rose to the level of a constitutional violation.

The Fifth Amendment is concerned with adverse comments on a defendant's choice not to testify, *see Lakeside*, 435 U.S. at 338, and the prosecutor's comments here do not appear adverse. They are certainly less pointed than those at issue in *Robinson*, where the defendant did not testify and the prosecutor told the jury that he could have told them his side of the story if he had wanted to. 485 U.S. at 28. Like the comments in *Robinson*, the prosecutor's comments regarding Petitioner's anticipated testimony can be fairly characterized as responding to defense counsel's statements—though here the statements that Petitioner would testify were made outside the presence of the jury. Ultimately, the Court need not decide whether the prosecutor's comments violated the Fifth Amendment because, even if they did, Petitioner cannot establish that any such error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

Here, there is no evidence that the prosecutor's comments were "manifestly intended to call attention to the defendant's failure to testify or [were] of such a character

**MEMORANDUM DECISION AND ORDER - 16**

that the jury would naturally and necessarily take it to be a comment on the failure to testify." *Beardslee v. Woodford*, 358 F.3d 560, 586 (9th Cir. 2004) (internal quotation marks omitted). The jury could not possibly have taken the prosecutor's statements as comments on the Petitioner's choice not to testify because (1) at the time of the comments, Petitioner had not yet testified, and (2) Petitioner eventually *did* testify. Therefore, the state court's decision that the prosecutor's comments—although unwise and potentially improper—were harmless is consistent with a reasonable application of *Griffin*, *Lakeside*, and *Robinson*. There is no support in Supreme Court precedent for Petitioner's argument that his rights were violated when he was allegedly forced to testify to avoid an adverse inference of guilt, particularly where defense counsel had informed the prosecutor (and the court) that Petitioner would testify. Petitioner's decision to take the stand nullified the potential prejudice that could have resulted had he chosen not to testify, and the decision to testify was made before the prosecutor said anything.

All of these factors lead the Court to conclude that the prosecutor's comments, whether constitutional violations or not, did not influence the jury's verdict. *See Brecht*, 507 U.S. at 637.

## CONCLUSION

Claim 2 of the Petition is procedurally defaulted and no exception applies to excuse that default. Petitioner is not entitled to relief on Claim 1 because the Idaho Court of Appeals reasonably adjudicated the claim and because Petitioner has not established

that the prosecutor's comments—even if unconstitutional—had substantial and injurious effect on the jury's guilty verdict.

## ORDER

**IT IS ORDERED:**

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is DISMISSED IN PART and DENIED IN PART, and this entire action is DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: **November 22, 2013**

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**